William J. Robinson (State Bar No. 83729)
email:  wrobinson@foley.com
Jean-Paul Ciardullo (State Bar No. 284170)
email:  jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone:  213-972-4500
Facsimile:   213-486-0065

Attorneys for **Toyo Tire & Rubber Co., Ltd**.
and **Toyo Tire U.S.A. Corp.**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **TOYO TIRE & RUBBER CO., LTD**., a Japanese corporation, and **TOYO TIRE U.S.A. CORP.**, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**CIA WHEEL GROUP**, a California Corporation, **DOUBLESTAR DONG FENG TYRE CO., LTD**., a Chinese corporation. , **QINGDAO DOUBLESTAR TIRE INDUSTRIAL CO, LTD**, a Chinese Corporation, **and DOUBLESTAR GROUP CORP**., a Chinese corporation.<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>**1. TRADE DRESS INFRINGEMENT;**<br><br>**2. UNFAIR COMPETITION; AND**<br><br>**3. DECLARATORY JUDGMENT RE PATENT INVALIDITY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Toyo Tire & Rubber Co., Ltd. ("TTR") and Toyo Tire U.S.A. Corp. ("TTC"; collectively "Toyo"), by and through their attorneys, allege as follows:

## JURISDICTION AND VENUE

1.     This is a civil action for trade dress infringement with a substantial and related claim for unfair competition, and a claim to declare the invalidity of a United States patent of one of the defendants that is based on plaintiff's inventions. These

1

claims arise under the Acts of Congress relating to trademarks, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and patents, 35 U.S.C. § 1 et seq., as well as the Declaratory Judgments Act, 28 to 28 U.S.C. §§ 2201 et seq.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 15 U.S.C. § 1121.

2. This Court has personal jurisdiction over the Defendants and venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), (c) and (d).  Plaintiffs are informed and believe, and on that basis allege, that Defendants have conducted and continue to conduct business in this District and have engaged in the complained of activities in this Judicial District.

## THE PARTIES

3. Plaintiff TTR is a Japanese corporation with its corporate headquarters and principal place of business at 1-17-18 Edobori, Nishi-ku, Osaka 550-8661, Japan.  Toyo Tire was established in 1945 and, after decades of growth and success, established Toyo Tire U.S.A. Corp., Nitto Tire U.S.A. Inc., Toyo Tire Holdings of Americas Inc., and Toyo Tire North America Manufacturing Inc. in the United States.

4. Plaintiff TTC is a California corporation with corporate headquarters and principal place of business located at 5665 Plaza Drive, Cypress, CA 90630.  Plaintiff TTC is the exclusive importer and distributor of "Toyo" brand tires, including the Toyo Open Country M/T tires.  TTC was the first subsidiary of a Japanese tire manufacturer to be established in the United States, starting out in a small office in southern California where it began warehousing and distributing commercial truck tires. Subsequently, TTC began offering passenger and light truck replacement tires, and through a network of independent tire dealers, grew the Toyo Tires brand in the United States. Toyo U.S.A. currently sells a broad range of passenger and light truck tires, as well as commercial truck and bus tires through a network of independent tire dealers.

5. Plaintiffs are informed and believe, and on that basis allege, that Defendant CIA Wheel Group ("CIAWG") is a California corporation with a principal place of

4850-8087-0689.2

business located at 18400 E. Gale Ave., City of Industry, CA 91748.  CIAWG does business as The Wheel Group ("TWG") and maintains a series of websites including www.thewheelgroup.com, www.amp-tires.com, and www.wheel-1.com.

6. Plaintiffs are informed and believe, and on that basis allege, that Defendant Doublestar Dong Feng Tyre Co., Ltd. ("DDF") is a Chinese corporation with its principal place of business located at No. 21 Hanjiang North Rd., Shiyan, Hubei, China 442011, and a registered agent located at America A9 Enterprise Ltd., located at 6050 W. Eastwood Avenue, #201, Chicago, IL 60630.

7. Plaintiffs are informed and believe, and on that basis allege, that Defendant Qingdao Doublestar Tire Industrial Co. Ltd. ("QDT") is a Chinese corporation with its principal place of business located at 14111 Floor, No. 577 Dalian Road Huangdao District Qingdao/Hai'an, China 266001.

8. Plaintiffs are informed and believe, and on that basis allege, that Defendant Doublestar Group Corp. ("DGC") is a Chinese corporation with its principal place of business located at 45 Qutang Road Shinan District Qingdao, China 266002.

9. Plaintiffs are informed and believe, and on that basis allege, that CIAWG, DDF, DQT and DGC are directly or indirectly engaged in the business of manufacturing, using, importing, marketing, selling and/or offering for sale in this Judicial District the tires at issue in this lawsuit, including tires sold under the "AMP M/T" series name and brand.  CIAWG is even the owner of a U.S. design patent that was improperly filed by a Jinlin Ma, the designer of the AMP M/T tire.

10. Plaintiffs are informed and believe, and on that basis allege, that each of these Defendants has ongoing and systematic contacts with this Judicial District, and has placed the products accused of infringement herein into the stream of commerce knowing and expecting that such products would end up in this Judicial District.  Plaintiffs are informed and believe, and on that basis allege, that these Defendants act individually and in concert to direct the AMP M/T branded tires at issue in this lawsuit to this Judicial District, availing themselves of ports in this Judicial District and occupying business

3

locations within this Judicial District, for the purpose of selling the tires at issue in this lawsuit within this Judicial District and transporting said tires from this Judicial District to other locations within the United States. Thus, upon information and belief, this Judicial District is a hub from which Defendants effectuate the importation, purchase, use, marketing, sale and/or offer for sale of the infringing AMP M/T branded tires identified herein.

11. The acts complained of herein by TTR and TTC arise out of the same transaction, occurrence, or series of transactions or occurrences and involve common questions of law and fact common to TTR and TTC.

## FACTUAL BACKGROUND

12. The tire market in the United States consists of sales of original equipment tires (for new vehicles) and replacement tires (for existing vehicles). Upon information and belief, in 2014, over 206 million automobile replacement tires were sold in the United States, as compared to 46 million original equipment tires. For light trucks, the sales figures were approximately 29 million replacement tires and nearly 5 million original equipment tires. For medium and heavy trucks, sales were about 17 million and 6 million, respectively. Upon information and belief, in 2014, U.S. replacement tire sales totaled nearly 253 million units and $37 billion.

13. In this market, Toyo has built a solid reputation around the world for sleek, high quality tires. In the United States, Toyo Tires has repeatedly been named #1 Overall Brand by North American tire dealers in Tire Review magazine's Annual Tire Brand Study. Toyo offers consumers a wide range of tires to fit virtually any need and any type of vehicle under the "Toyo" and "Nitto" brands. Toyo's tire portfolio covers a broad range of applications — from the high-performance, racing-inspired "Proxes" and "NT" lines to the "Open Country" and "Grappler" lines for light trucks and SUVs, to the luxury-touring Versado LX, to a broad range of commercial truck tires.

14. Toyo's tires are specifically designed to provide unique and distinctive tread and sidewall appearance. Toyo has developed unique and distinctive tread and side wall

4

1  patterns that visually set its tires apart from its competitors.

2      15. Toyo has a protectable trade dress in the overall appearance of its Open Country M/T tires, which was first introduced in 2003 under the Toyo brand. The Open Country M/T tire is a premium off-road maximum traction tire that combines solid on-road performance with extra ground clearance and higher load-carrying capacity and, for truck enthusiasts, a tread pattern with an aggressive appearance.

    16. The Open Country M/T trade dress ("OPMT Trade Dress") is the "OPMT look," i.e., the overall visual appearance and impression conveyed by the Open Country M/T tire tread design.

    17. The OPMT Trade Dress is arbitrary and inherently distinctive. The overall tread design of the OPMT Trade Dress is non-functional, for example, as demonstrated by the number of non-infringing, competing alternative tread patterns and designs employed by third-party tire manufacturers and retailers in the U.S. market as well as the global market.



    18. A picture of the OPMT tire with the tread blocks colored in blue is shown to the right. As can be seen, the OPMT Trade Dress is characterized by an aggressive tread design with hook-shaped blocks and scalloped shoulder blocks.

    19. The OPMT Trade Dress is aesthetically pleasing and, with its unique, aesthetically aggressive appearance and significant sales volume, has acquired secondary meaning such that it has become associated with the Toyo brand. That source-identifying role regardless of functional aspect of any individual element of that trade dress.

    20. The OPMT Trade Dress is not functional for several reasons. First, the trade dress is not essential to the use or purpose of the article or affects its cost or quality" and is thus non-functional. Many factors other than functionality went into the choice of the design and, Toyo has other tires that work equally well in the mud and off-road environment. Second, Toyo's exclusive use of the design does not put competitors at a significant non- reputation-related disadvantage. Thus, trade dress protection for the

4850-8087-0689.2

Open Country M/T leaves a variety of comparable alternative features that competitors may use to compete in the market. Indeed, whether a particular feature is functional has no bearing on whether it plays a source-identifying role.

21. Toyo has always been the exclusive source for Open Country M/T tires, more than 2.3 million of which have been sold to customers throughout the United States since 2003.

22. Since 2003, Toyo has built up valuable recognition and goodwill in its distinctive OPMT Trade Dress. Toyo has expended, and continues to expend, substantial time, effort, money, and other resources to develop and maintain the valuable goodwill that has come to be associated with the Open Country M/T tires incorporating the unique and recognizable OPMT Trade Dress.

23. Toyo has continuously and extensively advertised, marketed and promoted its Open Country M/T tires in the United States, investing over $22 million in such activities, including advertising directed to the distinctive, non-functional aspects of the appearance of the Open Country M/T tires.

24. As a result of Toyo's efforts, the OPMT Trade Dress has acquired secondary meaning and distinctiveness among off-road tire consumers and members of the industry, and it continues to have secondary meaning and distinctiveness. The Open Country M/T tire, which prominently displays the OPMT Trade Dress, is now widely known and recognized by its unique, ornamental and distinctive appearance, which identifies to off-road tire consumers and members of the industry that its source of origin is Toyo. The OPMT Trade Dress has come to be, and now is, well and favorably known to the public, particularly to off-road tire consumers, as being associated with Toyo's high-quality tires.

25. Based on the foregoing, the OPMT Trade Dress has become and now is a designation of origin of Toyo and a trademark owned by Toyo.

26. In prior litigation styled *Toyo Tire & Rubber Co. Ltd. and Toyo Tire U.S.A. Corp. v. Hong Kong Tri-Ace Tire Co., Ltd. et al.*, Case No: 8:14-SACV-00054-CJC (JPRx) (the "Tri-Ace Action") , the OPMT Trade Dress was asserted against the "Mark

Ma Dakar M/T" tires. The Mark Ma Dakar M/T tires were designed by Jinlin Ma, a resident of Guangzhou, China.

27. In the resolution of that litigation, DDF agreed that the OPMT Trade Dress was a valid and protectable trade dress of Toyo and that its "Mark Ma Dakar M/T" tires infringed that trade dress.

28. In particular, DDF agreed that Toyo's OPMT Trade Dress is a highly-recognizable tire trade dress in the off-road market. In particular, DDF confirmed that the OPMT Trade Dress: (a) is protectable; (b) has become associated with Toyo; (c) is arbitrary, non-functional, inherently distinctive and has acquired secondary meaning such that it is a designation of origin of Toyo and a trademark owned by Toyo. (Dkt. 8, ¶¶ 17-20). That same Stipulation confirmed that the DDF tires sold under the names "Mark Ma Dakar M/T" and "Mark Ma Dakar M/T II" tires are confusingly similar to and infringed upon the OPMT Trade Dress. (*See* Dkt. 8, ¶¶ 23-24).

29. In the March 10, 2014 Final Judgment (Dkt. 10), DDF and its "subsidiaries, affiliates, [and] parents" were permanently enjoined, *inter alia*, from "(2) Using [the] Open Country M/T ("OPMT") Trade Dress or any trade dress or tread or sidewall design confusingly similar thereto, for or in connection with advertising, marketing, promoting, distributing, offering for sale, selling or importing tires." The Final Judgment also enjoined DDF and its affiliates from engaging in any conduct aimed at or likely to result in diverting business intended for Toyo.

30. No sooner than the litigation was resolved, the enjoined tire was once again for sale in the United States under a new name, the Terrain Master AMP M/T ("AMP M/T"). Pictures of the Mark Ma Dakar M/T and the AMP M/T appear at the left and right, respectively. The tires are visually indistinguishable.



4850-8087-0689.2

31. The AMP M/T is manufactured by DDF's sister company QDT and is being imported, sold, and/or otherwise distributed in the United States by CIAWG. CIAWG's business is listed as "importer" at its www.wheel-1.com website.

32. CIAWG makes the tire available on its own websites such as www.wheel-1.com and through various on-line retailers such as Amazon and other retailers listed on the website http://www.thewheelgroup.com/where-to-buy. CIAWG even goes so far as to claim to have designed the tire, as its website www.thewheelgroup.com/about-us/ states "TWG proudly introduces its worldwide known privately designed wheel lines … under … and AMP mud terrain tires."

33. Plaintiffs are informed and believe, and on that basis allege, that what happened after entry of the Final Judgment was that production and/or distribution of the Mark Ma tire was simply shifted from DDF to QDT and a the new AMP M/T name was used in connection with its sale.

34. Plaintiffs are informed and believe, and on that basis allege, that given how DGC consists of DDF and QDT, that all three companies were involved in that shift. CIAWG facilitated that shift via its importation of the tire. CIAWG's importation has occurred via the Ports of Long Beach and Los Angeles via foreign shippers such as Astor Port Group Limited.

35. Plaintiffs are informed and believe, and on that basis allege, that CIAWG was actively involved in the foregoing acts, assisting and encouraging the manufacture, sales, and distribution of the Mark Ma Dakar M/T and AMP M/T tires. Mr. Ma filed a U.S. design patent application on March 23, 2013 for the infringing tread design of the Mark Ma Dakar M/T and AMP M/T tires. That application was assigned on that same date to TWG. The application issued as U.S. Design Patent No. D691,943 (the "'943 patent") and is owned by TWG. Thus, CIAWG's involvement with the infringements alleged herein dates back to at least 2013.

36. The '943 patent is invalid because it was filed in 2013, some ten years after the first sale of the Open Country M/T.

8

**Claim 1: Trade Dress Infringement by the AMP M/T Tire**

37. Plaintiffs reallege each and every allegation set forth in paragraphs 1-36, inclusive, and incorporates them by this reference herein.

38. This is a claim by Toyo against Defendants and each of them for trade dress infringement in violation of 15 U.S.C. § 1125.

39. The OPMT Trade Dress is owned by Toyo and has become associated with the Toyo brand.

40. Upon information and belief, Defendants have made, used, exported, imported, marketed, sold and/or offered for sale tire products, including but not limited to the AMP M/T tires, that infringe the OPMT Trade Dress.

41. To any ordinary observer, and to off-road tire customers and members of the industry, the "look" of the AMP M/T is confusingly similar to the OPMT Trade Dress and, in particular, to the ornamental and distinctive "look" of the Toyo Open Country M/T tires. Indeed, the tread design of the AMP M/T is identical to that of the Mark Ma Dakar M/T II" tires that DDF agreed were are confusingly similar to and infringed upon the OPMT Trade Dress.

42. Past, present and future use, distribution, sale and/or offer for sale by Defendants of tires using the OPMT Trade Dress, including but not limited to the AMP M/T tires, constitutes trade dress infringement under 15 U.S.C. § 1125(a).

43. Upon information and belief, Defendants have been aware of Toyo's Open Country M/T tire and the OPMT Trade Dress, based not only upon Toyo's extensive and exclusive original sales of Open Country M/T tires for over ten years, but also upon the terms of the Final Injunction in the prior action, and their trade dress infringement has therefore been and continues to be willful and deliberate. That willfulness is underscored by the filing and ownership of the '943 patent on a design that Mr. Ma did not invent.

44. Toyo has been damaged by willful trade dress infringement by Defendants in an amount to be determined at trial, including profits of Defendants and three times the amount of actual damages sustained by Toyo, together with costs and reasonable

9

attorneys' fees. Furthermore, by these acts, Defendants have irreparably injured Toyo and caused Toyo to suffer a substantial loss of goodwill and reputation, and such injury will continue unless they are enjoined by this Court.

45. By reason of the above actions, Toyo is entitled to the full range of relief under the Lanham Act, 15 U.S.C. §§ 1116-1118, including preliminary and permanent injunctive relief against Defendants restraining further acts in violation of 15 U.S.C. § 1125.

## CLAIM 2: STATE LAW UNFAIR COMPETITION

46. Plaintiffs reallege each and every allegation set forth in paragraphs 1-44 inclusive, and incorporates them by this reference herein.

47. By their actions as alleged above, Defendants conduct constitutes unlawful, unfair, and/or fraudulent business practices of a type proscribed by § 17200 et seq. of the California Business and Professions Code.

48. By reason of the above actions, Toyo is entitled to including preliminary and permanent injunctive relief against Defendants restraining further acts in violation of § 17200 et seq. of the California Business and Professions Code.

## CLAIM 3: DECLARATORY JUDGMENT OF PATENT INVALIDITY

49. Plaintiffs reallege each and every allegation set forth in paragraphs 1-36, inclusive, and incorporates them by this reference herein.

50. The Tri-Ace Action was a District Court counterpart to an action that Toyo brought before the United States International Trade Commission styled *In the Matter of Certain Tires and Products Containing Same*, No. 337-TA-894 (the "ITC Action").

51. On pages 4 and 5 of its January 31, 2014 Settlement Agreement with Toyo relative to the Tri-Ace Action and the ITC Action, Tri-Ace identified several design patents that Tri-Ace had filed on the Mark Ma Dakar M/T tire design, which is the same as the AMP M/T design. Those patents included the '943 patent.

4850-8087-0689.2

52. The tread designs of the '943 patent is identical to that in the OPMT Trade Dress. An excerpt of the '943 patent is shown to the right.



53. Under the terms of the Settlement Agreement, Tri-Ace was supposed to "file the appropriate documentation, nullifying any intellectual property protections it received, or applied for, from any government agency in the United States or anywhere in the world" relative to these patents.

54. Tri-Ace did nothing relative to the '943 patent, however, leaving in the hands of TWG, which, as alleged, is a dba of CIAWG. CIAWG likewise did nothing to remove this improperly-filed and invalid patent from the U.S. Patent Office.

55. The '943 design patent is invalid for a variety of reasons, under 35 U.S.C. §§ 102, 102, and 112, including the wrong inventor, a filing date some ten (10) years after the Open Country M/T tires were first sold, and for fraud on the U.S. Patent Office for even filing it under such conditions.

56. The continued existence of the '943 patent and is ownership by CIAWG despite Tri-Ace's agreement to nullify or cancel it has created substantial, immediate and actual controversy between the Toyo and CIAWG as to the validity of the '943 patent.

57. Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the invalidity of the '943 U.S. patent is necessary and appropriate under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the unlawful conduct of Defendants as alleged in Claims 1-3 above, Plaintiffs respectfully pray for judgment against Defendants as follows:

A. That Defendants be adjudged to have infringed Toyo's OPMT Trade Dress in violation of 15 U.S.C. § 1125(a).

B. That Defendants' trade dress infringement be adjudged willful and

4850-8087-0689.2

deliberate.

C. That Defendants and their its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with it be preliminarily and permanently enjoined from:

(1) Selling the AMP M/T tire;

(2) Using Toyo's OPMT Trade Dress or any trade dress or tread or sidewall design confusingly similar thereto, for or in connection with advertising, marketing, promoting, distributing, offering for sale, or selling tires;

(3) Using photographs, illustrations, or other depictions of Toyo's OPMT Trade Dress or any trade dress or tread or sidewall design confusingly similar thereto, for or in connection with advertising, marketing, promoting, distributing, offering for sale, or selling tires;

(4) Using any name, mark, designation, product configuration, trade dress, or other material for or in connection with advertising, marketing, promoting, distributing, offering for sale, or selling tires that are likely to cause confusion, mistake or deception as to source relative to any of Toyo's names, marks, designations, product configurations, or trade dress, including but not limited to Toyo's OPMT Trade Dress;

(5) Passing off its goods and/or services as those of Toyo and/or claiming to have designed the AMP M/T and/or and tire confusingly similar thereto;

(6) Engaging in any conduct aimed at or likely to result in diverting business intended for Toyo or injuring Toyo's goodwill or business reputation by way of imitation, misrepresentation, false statements, advertising, fraud and/or deception; and

(7) Unfairly competing with Toyo.

D. An order from this Court compelling each Defendant to mail notice letters at their own expense to all distributors, dealers, accounts, salesmen, employees, jobbers, and suppliers, informing them that each Defendant has committed trade dress

12

4850-8087-0689.2

infringement, and that Defendant has no affiliation, connection, or other business relationship with Plaintiffs, and requesting that the letter recipients return to Defendant for full credit or refund all of Defendant's tires using the infringing design and/or trade dress.

  E. An order from this Court commanding that each Defendant deliver to Plaintiffs for destruction all advertising, products, tires, labeling, packaging, sales literature, promotional literature, owner's manuals, catalogs, displays, boxes, packages, and other trade pieces within their possession or control and which use or display the infringing design and trade dress.

  F. An accounting for all profits of each Defendant derived by reason of the acts alleged in this Complaint.

  G. An award of money damages suffered by Plaintiffs in an amount to be ascertained, and the trebling thereof.

  H. An order compelling each Defendant to disgorge the amounts by which it has been unjustly enriched by the acts alleged herein.

  I. A constructive trust imposed on all revenue, income and things of value derived by each Defendant in the marketing and selling of tires using imitative tread designs, trade dress and marks, including the tread design and trade dress complained of in Complaint.

  J. A declaration that U.S. Design Patent No. D691,943 is invalid.

  K. Judgment, relief, and requests as set forth in this Complaint.

  L. Reasonable attorney's fees, prejudgment interest, and costs of this action.

  M. Such other, further, and different relief as the court deems proper under the circumstances.

4850-8087-0689.2

| | | |
|---|---|---|
| 1 | Dated: February 11, 2015 | /s/ *William J. Robinson* |
| 2 | | William J. Robinson |
| | | **FOLEY & LARDNER LLP** |
| 3 | | **Attorneys for Toyo Tire & Rubber Co., Ltd.** and **Toyo Tire U.S.A. Corp.** |

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs Toyo Tire & Rubber Co., Ltd. and Toyo Tire U.S.A. Corp. hereby demand a trial by jury of all issues so triable.

Dated: February 11, 2015                         /s/ *William J. Robinson*
                                                 William J. Robinson
                                                 **FOLEY & LARDNER LLP**

                                                 **Attorneys for Toyo Tire & Rubber Co., Ltd.** and **Toyo Tire U.S.A. Corp.**

4850-8087-0689.2