William J. Robinson (State Bar No. 83729)
email: wrobinson@foley.com
Jean-Paul Ciardullo (State Bar No. 284170)
email: jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone:  213-972-4500
Facsimile:   213-486-0065

Attorneys for **Toyo Tire & Rubber Co., Ltd**.
and **Toyo Tire U.S.A. Corp.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **TOYO TIRE & RUBBER CO., LTD**., a Japanese corporation, and  **TOYO TIRE U.S.A. CORP.**, a California corporation,<br><br>　　　　　　Plaintiffs,<br><br>　　V.<br><br>**CIA WHEEL GROUP**, a California Corporation, **DOUBLESTAR DONG FENG TYRE CO., LTD**., a Chinese corporation, **QINGDAO DOUBLESTAR TIRE INDUSTRIAL CO, LTD**, a Chinese Corporation, **DOUBLESTAR GROUP CORP**., a Chinese corporation; **HONG KONG TRI-ACE TIRE CO., LTD**., a Chinese corporation; and, **JINLIN MA**, an individual;<br><br>　　　　　　Defendants. | Case No:  **8:15-sacv-00246-DOC (DFMx)**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. TRADE DRESS INFRINGEMENT;**<br>**2. FRAUD;**<br>**3. BREACH OF CONTRACT;**<br>**4. UNFAIR COMPETITION;**<br>**5. DECLARATORY JUDGMENT OF PATENT INVALIDITY; AND**<br>**6. DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Toyo Tire & Rubber Co., Ltd. ("TTR") and Toyo Tire U.S.A. Corp. ("TTC"; collectively "Toyo"), by and through their attorneys, allege as follows:

### JURISDICTION AND VENUE

1.　　This is a civil action for trade dress infringement with substantial and related claims for fraud, breach of contract, enforcement of judgment, unfair competition, and a

1

claim to declare the invalidity and unenforceability of a United States patent of one of the defendants that is based on TTR's inventions.  These claims arise under the Acts of Congress relating to trademarks, 15 U.S.C. § 1051 et seq. (the "Lanham Act"), and patents, 35 U.S.C. § 1 et seq., as well as the Declaratory Judgments Act, 28 to 28 U.S.C. §§ 2201 et seq.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 15 U.S.C. § 1121.

2.      This Court has personal jurisdiction over the Defendants and venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), (c) and (d).  Plaintiffs are informed and believe, and on that basis allege, that Defendants have conducted and continue to conduct business in this District and have engaged in the complained of activities in this Judicial District.  Furthermore, Defendant Doublestar Dong Feng Tyre Co., Ltd. is already subject to a judgment in a prior suit brought by Toyo in this District, C.D. Cal. Case No. 8:14-cv-00054-CJC-JPR (Dkt. 10).  Additionally, Defendant Hong Kong Tri-Ace Tire Co., Ltd. entered into a Settlement Agreement with Toyo from that action that identifies the Central District of California as having exclusive jurisdiction to address legal proceedings arising from that agreement.

## THE PARTIES

3.      Plaintiff TTR is a Japanese corporation with its corporate headquarters and principal place of business at 1-17-18 Edobori, Nishi-ku, Osaka 550-8661, Japan.  Toyo Tire was established in 1945 and, after decades of growth and success, established Toyo Tire U.S.A. Corp., Nitto Tire U.S.A. Inc., Toyo Tire Holdings of Americas Inc., and Toyo Tire North America Manufacturing Inc. in the United States.

4.      Plaintiff TTC is a California corporation with corporate headquarters and principal place of business located at 5665 Plaza Drive, Cypress, CA 90630.  Plaintiff TTC is the exclusive importer and distributor of "Toyo" brand tires, including the Toyo Open Country M/T tires.  TTC was the first subsidiary of a Japanese tire manufacturer to be established in the United States, starting out in a small office in southern California where it began warehousing and distributing commercial truck tires.  Subsequently, TTC

2

began offering passenger and light truck replacement tires, and through a network of independent tire dealers, grew the Toyo Tires brand in the United States.  Toyo U.S.A. currently sells a broad range of passenger and light truck tires, as well as commercial truck and bus tires through a network of independent tire dealers.

5.     Plaintiffs are informed and believe, and on that basis allege, that Defendant CIA Wheel Group ("CIA") is a California corporation with a principal place of business located at 18400 E. Gale Ave., City of Industry, CA 91748.  CIA does business as The Wheel Group ("TWG") and maintains a series of websites including www.thewheelgroup.com, www.amp-tires.com, and www.wheel-1.com.

6.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Doublestar Dong Feng Tyre Co., Ltd. ("DDF") is a Chinese corporation with its principal place of business located at No. 21 Hanjiang North Rd., Shiyan, Hubei, China 442011, and a registered agent located at America A9 Enterprise Ltd., located at 6050 W. Eastwood Avenue, #201, Chicago, IL 60630.

7.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Qingdao Doublestar Tire Industrial Co. Ltd. ("QDT") is a Chinese corporation with its principal place of business located at 657 Fenghuangshan Road, Huangdao District, Qingdao, China.

8.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Doublestar Group Corp. ("DGC") is a Chinese corporation with its principal place of business located at 14th Floor, 1 Yueliangwan Road, Huangdao District, Qingdao, China.

9.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Doublestar Group Corp. ("DGC") is the parent corporation of DDF and QDT and that DDF and QDT are sister corporations.  DGC, DDF, and QDT will be collectively referred to herein as the "Doublestar Entities."

10.    Plaintiffs are informed and believe, and on that basis allege, that Defendant Hong Kong Tri-Ace Tire Co., Ltd. ("Tri-Ace") is a Hong Kong corporation located at Unit 602 6F, Causeway Bay Commercial Building 1 Sugar Street, Causeway Bay HK,

3

and another location at Unit 612.6/F, Guangzhou International Trade Building, No. 628 Gurangzhou Dadao Zhong, Tianhe, Guangzhou, China, and that Tri-Ace is engaged in the business of manufacturing, using, exporting, importing, marketing, selling and/or offering for sale in this Judicial District the tires at issue in this lawsuit.

11.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Tri-Ace concentrates on the performance end of the market in both passenger and light truck/SUV tires, including development of competition tires for rallying.

12.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Tri-Ace has had frequent contacts with the United States in connection with its tires, including booths at the SEMA Show in Las Vegas to promote to promote Tri-Ace tires and its associated brands Mark Ma and Black Bear; and, in 2001, the setting up of Tri-Ace Wheel & Tire Corp. in Tulsa, OK.

13.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Jinlin Ma: (a) is a resident of Hong Kong and/or Taiwan; (b) is founder, owner and the General Manager of Tri-Ace; and (c) was formerly a tire designer for South China Tire & Rubber Co. Ltd. and Shandong Yongtai Chemical Co. Ltd. and that "Mark Ma" is the anglicized version of Jinlin Ma's name.

14.     Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma has travelled frequently to the United States to promote Tri-Ace tires and its associated brands.  Such trips have involved speaking engagements at the SEMA Show in Las Vegas.

15.     Plaintiffs are informed and believe, and on that basis allege, that Defendants are directly or indirectly engaged in the business of manufacturing, using, importing, marketing, selling and/or offering for sale in this Judicial District the tires at issue in this lawsuit, including the AMP M/T Terrain Master tire ("AMP M/T").

16.     CIA is also the owner of a U.S. design patent that was filed by Mr. Ma, the designer of the AMP M/T tire.  Tri-Ace and Mr. Ma had previously claimed control over that patent.

4

17.     Plaintiffs are informed and believe, and on that basis allege, that each of these Defendants has ongoing and systematic contacts with this Judicial District, and has placed the products accused of infringement herein into the stream of commerce knowing and expecting that such products would end up in this Judicial District.

18.     Plaintiffs are informed and believe, and on that basis allege, that these Defendants act individually and in concert to direct the AMP M/T branded tires at issue in this lawsuit to this Judicial District, availing themselves of ports in this Judicial District and occupying business locations within this Judicial District, for the purpose of selling the tires at issue in this lawsuit within this Judicial District and transporting said tires from this Judicial District to other locations within the United States.

19.     Plaintiffs are informed and believe, and on that basis allege, that this Judicial District is a hub from which Defendants implement the importation, purchase, use, marketing, sale and/or offer for sale of the infringing AMP M/T branded tires identified herein.

20.     The acts complained of herein by TTR and TTC arise out of the same transaction, occurrence, or series of transactions or occurrences and involve common questions of law and fact common to TTR and TTC.

## **FACTUAL BACKGROUND**

21.     The tire market in the United States consists of sales of original equipment tires (for new vehicles) and replacement tires (for existing vehicles). Plaintiffs are informed and believe, and on that basis allege, that in 2014, over 206 million automobile replacement tires were sold in the United States, as compared to 46 million original equipment tires. For light trucks, the sales figures were approximately 29 million replacement tires and nearly 5 million original equipment tires. For medium and heavy trucks, sales were about 17 million and 6 million, respectively.  In 2014, U.S. replacement tire sales totaled nearly 253 million units and $37 billion.

### ***Toyo and its Trade Dress Rights***

22.     In this market, Toyo has built a solid reputation around the world for sleek,

5

high quality tires.  In the United States, Toyo Tires has repeatedly been named #1 Overall Brand by North American tire dealers in Tire Review magazine's Annual Tire Brand Study. Toyo offers consumers a wide range of tires to fit virtually any need and any type of vehicle under the "Toyo" and "Nitto" brands. Toyo's tire portfolio covers a broad range of applications — from the high-performance, racing-inspired "Proxes" and "NT" lines to the "Open Country" and "Grappler" lines for light trucks and SUVs, to the luxury-touring Versado LX, to a broad range of commercial truck tires.

23.      Toyo's tires are specifically designed to provide unique and distinctive tread and sidewall appearance. Toyo has developed unique and distinctive tread and side wall patterns that visually set its tires apart from its competitors.

24.      Toyo has a protectable trade dress in the overall appearance of its Open Country M/T tires, which was first introduced in 2003 under the Toyo brand. The Open Country M/T tire is a premium off-road maximum traction tire that combines solid on-road performance with extra ground clearance and higher load-carrying capacity and, for truck enthusiasts, a tread pattern with an aggressive appearance.

25.      The Open Country M/T trade dress ("OPMT Trade Dress") is the "OPMT look," i.e., the overall visual appearance and impression conveyed by the Open Country M/T tire tread design.

26.      The OPMT Trade Dress is arbitrary and inherently distinctive.  The overall tread design of the OPMT Trade Dress is non-functional, for example, as demonstrated by the number of non-infringing, competing alternative tread patterns and designs employed by third-party tire manufacturers and retailers in the U.S. market as well as the global market.

27.      A picture of the OPMT tire with the tread blocks colored in blue is shown to the right.  As can be seen, the OPMT Trade Dress is characterized by an aggressive tread design with hook-shaped blocks and scalloped shoulder blocks.

28.     The OPMT Trade Dress is aesthetically pleasing and, with its unique, aesthetically aggressive appearance and significant sales volume, has acquired secondary meaning such that it has become associated with the Toyo brand.  That source-identifying role regardless of functional aspect of any individual element of that trade dress.

29.     The OPMT Trade Dress is not functional for several reasons.  First, the trade dress is not essential to the use or purpose of the tire or affects its cost or quality and is thus non-functional. Many factors other than functionality went into the choice of the design and, Toyo has other tires that, despite having distinctively different appearance, work equally well in the mud and off-road environment.  Second, Toyo's exclusive use of the design does not put competitors at a significant non- reputation-related disadvantage.  Thus, trade dress protection for the OPMT tire leaves a variety of comparable alternative features that competitors may use to compete in the market.  Indeed, whether a particular feature is functional has no bearing on whether the overall appearance of a combined set of features plays a source-identifying role that is protectable under trade dress law.

30.     Toyo has always been the exclusive source for Open Country M/T tires, more than 2.3 million of which have been sold to customers throughout the United States since 2003.

31.     Since 2003, Toyo has built up valuable recognition and goodwill in its distinctive OPMT Trade Dress.  Toyo has expended, and continues to expend, substantial time, effort, money, and other resources to develop and maintain the valuable goodwill that has come to be associated with the Open Country M/T tires incorporating the unique and recognizable OPMT Trade Dress.

32.     Toyo has continuously and extensively advertised, marketed and promoted its Open Country M/T tires in the United States, investing over $22 million in such activities, including advertising directed to the distinctive, non-functional aspects of the appearance of the Open Country M/T tires.

33.     As a result of Toyo's efforts, the OPMT Trade Dress has acquired secondary meaning and distinctiveness among off-road tire consumers and members of the industry,

7

and it continues to have secondary meaning and distinctiveness. The Open Country M/T tire, which prominently displays the OPMT Trade Dress, is now widely known and recognized by its unique, ornamental and distinctive appearance, which identifies to off-road tire consumers and members of the industry that its source of origin is Toyo. The OPMT Trade Dress has come to be, and now is, well and favorably known to the public, particularly to off-road tire consumers, as being associated with Toyo's high-quality tires.

34.     Based on the foregoing, the OPMT Trade Dress has become and now is a designation of origin of Toyo and a trademark owned by Toyo.

### *The Commercial Relationship Between Tri-Ace and the Doublestar Entities*

35.     Plaintiffs are informed and believe, and on that basis allege, that the molds for all the various tires identified herein came from, and are owned and controlled by, Mr. Ma and Tri-Ace.

36.     Plaintiffs are informed and believe, and on that basis allege, that: (a) the commercial relationship between Tri-Ace and the Doublestar Entities is that Tri-Ace supplies molds to DDF, QDT, and/or DGC and enters into production contracts with those companies, and (b) those companies then use those molds to manufacture tires for Tri-Ace.

37.     Plaintiffs are informed and believe, and on that basis allege, that after the production has occurred, the Doublestar Entities sell the tires to Tri-Ace and/or Mr. Ma, and then transfer the tires to a Chinese port for shipment to the United States and elsewhere as directed by Tri-Ace and Mr. Ma.

38.      Plaintiffs are informed and believe, and on that basis allege, that the Doublestar Entities also sell the tires to other parties for ultimate distribution in the United States.

39.     Plaintiffs are informed and believe, and on that basis allege, that via this relationship, Tri-Ace and the Doublestar Entities have formed an active partnership to produce and sell tires for mutual profit.

40.     Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace

may also manufacture tires itself.

### *Past Legal Actions Involving The OPMT Trade Dress*

### *The ITC Action*

41.     On September 13, 2013, following the submission of a complaint by Toyo, the U.S. International Trade Commission instituted an investigation captioned *In the Matter of Certain Tires and Products Containing Same*, No. 337-TA-894 (the "ITC Action").  Tri-Ace and DDF were named as respondents in that action, along with 14 other respondents, who were either Chinese tire manufacturers or those that distribute tires made by them.

42.     Among the accused tires in that action was a "Mark Ma Dakar M/T" tire that was made by DDF and distributed by Tri-Ace.  The Mark Ma Tire was designed by Mr. Ma. The AMP M/T was not a tire at issue in the ITC case.

43.     As the ITC case progressed, one group of the Respondents ignored the Complaint and was defaulted.  Another group (including Tri-Ace) signed settlement agreements.  DDF, after engaging in settlement negotiations with Toyo, ultimately did not sign a settlement agreement and instead filed, on January 19, 2014, a "Consent Order Stipulation" by which it agreed not to import the accused tires.

44.     Toyo's Settlement Agreement with the various Respondents that did settle – including Tri-Ace – followed a standardized template that was changed slightly as to the various Respondents who settled.  One of Toyo's goals for settlement was to eliminate other potential tire infringements claims as to other Toyo tires and intellectual property. As such, the Settlement Agreement covered two groups of tires: (a) the "Accused Tires," that were subject to the patent claims in the ITC action; and (b) the tires that were listed on Ex. 4 to the Settlement Agreement that Toyo believed infringed other of its intellectual property, such as its trade dress rights in the OPMT tire.  The AMP M/T tire was specifically listed on Ex. 4 and identified as infringing the OPMT trade dress.  The Mark Ma Dakar II tire was also listed as an OPMT trade dress infringement.

45.     The Settlement Agreement was signed on January 31, 2014 on behalf of Tri-

9

Ace by Mr. Ma as General Manager.

46.     In the Settlement Agreement, Tri-Ace, via its signatory Ma, agreed as follows respect to its infringement of the OPMT Trade Dress (as well as its infringement of other Toyo intellectual property):

    a. ¶¶ 1.7/4.1: cease all manufacture and sale of the accused tires, including the AMP M/T tire, *anywhere in the world*;

    b. ¶ 2.3: destroy the molds used to manufacture the AMP M/T tire, including molds that had been provided to any manufacturers and provide a confirming declaration (¶ 2.5);

    c. ¶ 1.10:  to "file the appropriate documents nullifying any intellectual property protection it received, or applied for, from any government agency in the United States or anywhere in the world…include[ing] [U.S. Design Patent No.] D691,943 (filed with the USPTO in March 2013)";

    d. ¶ 1.12: it warranted that Jinlin Ma, as an individual, had "full authority, competence and power to bind it and the Tri-Ace Entities to this Agreement and all of the terms hereof"; and

    e. ¶ 4.2: that upon discovery of a breach, Toyo would be entitled to immediate injunctive relief and a 20% royalty on the prohibited sales.

47.     The inclusion of the '943 Patent in the Tri-Ace Settlement Agreement at ¶ 1.10 was made because it appeared to cover one of the Mark Ma Dakar tires at issue and because Ma was listed as the inventor. To ensure that that the cancellation would be done, the Settlement Agreement included the provisions of ¶ 1.12.

48.     Plaintiffs are informed and believe, and on that basis allege that During the negotiations leading up to the January 31, 2014 Settlement Agreement ("Settlement Agreement") between Toyo and Tri-Ace, Tri-Ace and Mr. Ma deliberately suppressed any information regarding their involvement with the AMP M/T tire.  Ma also suppressed the fact that he had previously sold and assigned the '943 patent to CIA and which relates to one of the Mark Ma Dakar and the AMP M/T tires.  The AMP M/T tire is virtually

10

1   indistinguishable from one of the Mark Ma Dakar tires and both appear to be reflected in

2   the design in the '943 Patent, as shown below:





MARK MA DAKAR          AMP M/T

12   49.      Based on what Toyo knew at the time of the Settlement Agreement with Tri-

13   Ace, it Toyo moved to terminate the ITC case relative to Tri-Ace after Ma signed the

14   Settlement Agreement, as well as the California Action referenced below.

15   50.      Regarding DDF, during

16   the time of its settlement negotiations

17   with DDF, Toyo supplied DDF with a

18   Manufacturer Settlement Questionnaire

19   regarding the tires at issue in that

20   action. That Questionnaire was directed

21   two the two groups of tires: (a) the

22   "Accused Tires" as defined in the ITC

23   action, which included the Mark Ma

24   Dakar Tire; and (b) the tires that were

25   listed on Ex. 4 to a Draft Settlement

26   Agreement, which is the same Ex. 4 as

27   to the Settlement Agreement that was

28   executed by Tri-Ace.

MANUFACTURER SETTLEMENT QUESTIONNAIRE

1.   Identify any other name, designation or label which the Accused Tire is known by.
     MARK MA-TUFF M/T
2.   Identify the ports of entry at which the Accused Tires arrive in the United States, and all entities to your knowledge in any way connected to or involved with the importation of the Accused Tires into the United States.
     LONGBEACH,MIAMI;  HONGKONG TRI-ACE TIRE CO.,LTD
3.   Identify the date you, your parents, divisions, subsidiaries, affiliates, successors, and/or assigns, and/or directors, officers, and/or employees of any of them, began manufacturing the Accused Tires.
     MARK MA May, 04, 2013
4.   Identify, on a monthly or quarterly basis the volume of Accused Tires you have manufactured since the date provided in response to Question 3.
     MARK MA total: 5414PCS ( from May 04,2013 to Aug 15,2013 )
5.   Identify the entity(ies) that do now or have ever purchased the Accused Tires from you. For each entity, provide the first date and the most recent date on which you sold the Infringing Tires.
     HONGKONG TRI-ACE TIRE CO.,LTD The earliest date of purchase:  May 14,2013,
     The latest date of purchase:  July 04,2013.

6.   Provide, by entity, on a monthly or quarterly basis the volume of Accused Tires that you sold to all entities identified in response to Question 5.
     HONGKONG TRI-ACE TIRE CO.,LTD MARK MA-DAKAR M/T 2458PCS
7.   Provide the address of all entities identified in response to Question 5.
     HONGKONG TRI-ACE TIRE CO.,LTD;
     address  :  Unit  612,6/F  GUANGZHOU  INTERNATIONAL  TRADE
     BUILDING,NO.628 GUANGZHOU DADAO ZHONG,TIANHE,GUANGZHOU
8.   State whether any entity asked you to provide any of the Accused Tires on an OEM basis, and if so, identity all such entities.
     YES,OEM, HONGKONG TRI-ACE TIRE CO.,LTD
9.   Identify which of, if any, of the tires listed in Exhibit 4 to the Draft Settlement Agreement you manufacture other than the Accused Tires.
     TRI-ACE-FUEL M/T
10.  Provide the address of all entities identified in response to this Questionnaire.

     HONGKONG TRI-ACE TIRE CO.,LTD Unit 612,6/F GUANGZHOU INTERNATIONAL TRADE BUILDING,NO.628 GUANGZHOU DADAO ZHONG,TIANHE,GUANGZHOU

11.  Identify all molds you (a) own and/or (b) were provided to you and/or (c) were provided the blueprints of in order that the molds be built, where such molds are or have been used in the creation of the Accused Tires.

     (b) HONGKONG TRI-ACE TIRE CO.,LTD

51.     That Questionnaire had several questions relevant to this action: (a) Question 2, which asked for the port of entry of the tires into the United States; (b) Question 5, which asked for the purchaser of the tires; (c) Question 8, which asked for the identity of the entity that had requested manufacture of the tires; (d)  Question 9, which asked which tires on Ex. 4 were manufactured; and (e) Question 11(b), which asked for an identification of who owned the molds that were provided to DDF.

52.     Plaintiffs are informed and believe, and on that basis allege that DDF arranged for Tri-Ace and Mr. Ma to respond to the Questionnaire, further demonstrating the close coordination among them. Mr. Ma filled out the Questionnaire on DDF's behalf. Weijie Song of DDF then signed it and it was and supplied it to Toyo in December 2013.

53.     That Questionnaire confirmed the following integrated commercial relationship between Tri-Ace and the DDF: (a) the tires entered the United States at Long Beach, California; (b) Tri-Ace purchased the tires from DDF; (c) DDF did OEM manufacturing for Tri-Ace; and (d) Tri-Ace owned the molds.

54.     Plaintiffs are informed and believe, and on that basis allege, that while providing the forgoing information in response to Questions 2, 5, 8, and 11(b), DDF, Tri-Ace and Mr. Ma deliberately misrepresented and suppressed their involvement in the AMP M/T tire in response to Question 9, which had asked "Identify which, if any, of the tires listed in Exhibit 4 to the Settlement Agreement you manufacture other than the Accused Tires."  The response of Tri-Ace and DDF was "TRI-ACE FUEL M/T." The AMP M/T, which was listed on Ex. 4, was not identified on the response to Question 9.

55.     At all times prior the Tri-Ace Settlement Agreement and DDF's Consent Order, Tri-Ace, Ma and DDF deliberately misrepresented and suppressed all information regarding their involvement with the AMP M/T tire.

56.     On August 19, 2014, Mr. Ma executed a Certificate of Destruction on behalf of Tri-Ace in which he attested under penalty of perjury to the destruction of all infringing molds in Tri-Ace/Ma's own possession and in the possession of any manufacturers.  The Certificate further certified that the molds had been so completely

12

destroyed as to be incapable of being repaired. That Certificate was both false and perjurious because the AMP M/T molds (and perhaps others) were not destroyed.



57. This Certificate continued the pattern of misrepresentation and suppression of information relative to the AMP M/T tire.

58. Plaintiffs are informed and believe, and on that basis allege, that such suppression was done because Tri-Ace, Mr. Ma and the Doublestar Entities intended to induce Toyo to settle the ITC case, and then continue to manufacture the AMP M/T tire for ultimate sale in the United States by CIA and elsewhere by others.

59. Plaintiffs are informed and believe, and on that basis allege that an additional reason for the foregoing chicanery was due to Ma's relationship with CIA, the US distributor of the AMP M/T to which Ma had assigned the '943 Patent, which relates to both the Mark Ma Dakar and AMP M/T tires. The tread design of the '943 Patent copied the OPMT tire tread, which Mr. Ma did not design. The '943 Patent was an attempted to appropriate the OPMT that design for himself for use in profiting from the OPMT design. The '943 patent is invalid because it was filed in 2013, some ten years after the first sale of the OPMT tire.

60. The '943 Patent was not nullified because Mr. Ma did not own it as of the time of the Tri-Ace Settlement Agreement, and because Ma's warranty and representation regarding the power to cancel the patent was false. Instead, as CIA has admitted in its prior Answer (Dkt. 17, ¶ 35) that the '943 patent was assigned (i.e., sold and transferred) by Ma to CIA in March 2013, some nine months before Tri-Ace signed the Settlement Agreement. The U.S. PTO records reflect that Paul Yang of CIA was the person with whom the PTO corresponded during prosecution of the patent.

61.     Plaintiffs are informed and believe, and on that basis allege that Mr. Ma and Tri-Ace were in the position as of the time of the Settlement Agreement of: (a) having already sold to CIA a design patent that covered both one of  the Mark Ma Dakar tires and the AMP M/T tire; (b) knowing that CIA believed it owned the design patent and the rights to the AMP M/T tire; and (c) knowing that AMP M/T tires were being made for CIA.

62.     Plaintiffs are informed and believe, and on that basis allege that Tri-Ace and Mr. Ma thus had the choice of: (a) either lying to Toyo about the molds and the manufacturing of the AMP M/T; or (b) revealing the truth about their involvement with CIA and the AMP M/T and destroying the revenue stream from sales of the AMP M/T, from which DDF also benefitted, and their relationship with CIA.  Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma and Tri-Ace chose to lie.

63.     Plaintiffs are informed and believe, and on that basis allege, that Defendants specifically intended the AMP M/T tire to compete with sales of the Toyo Open Country M/T tires in the United States, and the AMP M/T tires are priced lower than the Toyo Open Country M/T in a deliberate effort to steal business from Toyo in the United States. Plaintiffs are informed and believe, and on that basis allege, that the AMP M/T tires are of poorer quality than the Toyo Open Country M/T, and thus damage Toyo's goodwill – and that of the Open Country M/T trade dress – with the consuming public in the United States.

64.     On November 19, 2015, Toyo learned for the first time that DDF and QDT are manufacturing the AMP M/T and that the molds are owned by Tri-Ace and Mr. Ma.

### *The California Action*

65.     On January 13, 2014, prior to the Tri-Ace Settlement Agreement and the DDF Consent Order, Toyo filed a related litigation in the Central District of California styled *Toyo Tire & Rubber Co. Ltd. and Toyo Tire U.S.A. Corp. v. Hong Kong Tri-Ace Tire Co., Ltd. et al.*, Case No: 8:14-SACV-00054-CJC (JPRx) (the "Tri-Ace Action").  In that action, Toyo sued Tri-Ace and DDF (among others) for, *inter alia*, infringement of

14

the OPMT Trade Dress. The accused tires included the Mark Ma Tire (which also includes the Mark Ma Dakar M/T II variety). The AMP M/T tire had not been included in view of the misrepresentations relative to that tire that had been made by Tri-Ace and DDF just a few weeks prior in the December 2013 Questionnaire.

66. Because DDF had not entered into a Settlement Agreement with Toyo, the California case was resolved relative to DDF by DDF and Toyo entering into a March 7, 2014 Stipulation with Toyo (Tri-Ace Action Dkt. 8 ¶¶ 17-20, "Stipulation") under which DDF agreed as follows:

    a. Toyo has "a protectable trade dress in the overall appearance of its Open Country M/T tires" whose "overall tread design…is arbitrary, inherently distinctive and non-functional," and "has acquired secondary meaning and distinctiveness";

    b. DDF had manufactured the Mark Ma Tires (and with molds from Tri-Ace in view of the Questionnaire answers); and

    c. that the Mark Ma Tires infringed upon Toyo's trade dress rights.

67. Pursuant to the Final Judgment against DDF (Dkt. 10, "Final Judgment"), DDF and its "subsidiaries, affiliates, parents…and all persons acting in concert or in participation with  [DDF]" were permanently enjoined, *inter alia*, from "[u]sing [the] Open Country M/T ("OPMT") Trade Dress or any trade dress or tread or sidewall design confusingly similar thereto, for or in connection with advertising, marketing, promoting, distributing, offering for sale, selling or importing tires."

68. The Final Judgment also enjoined DDF, its affiliates, and those acting in concert or participation with DDF, from engaging in any conduct aimed at or likely to result in diverting business intended for Toyo.

69. In August 2014, *after* the Stipulation and Final Judgment relative to DDF, Toyo began to see many AMP M/T tires on the market.  As such, Toyo wrote a letter to DDF, and copied QDT and DGC, which attached the Final Judgment, advised them that they were all in contempt of the Final Judgment in view of its affiliate's manufacturing of

15

the AMP M/T.  At that time, Toyo was of the belief that parent company DGC had simply shifted the manufacturing of the one of the enjoined Mark Ma Dakar tires from DDF to its sister QDT and renamed the tire the AMP M/T, as the two tires were virtually identical.  DDF did not respond to the letter.

70.    The facts Toyo learned regarding mold ownership on November 19, 2015 Toyo's first knowledge about Ma's and Tri-Ace's ownership of the molds for the AMP M/T.  As of that point in time, it became clear that: (a) DDF had lied to Toyo on the Questionnaire relative to the AMP M/T when it failed to identify the AMP M/T as one of the tires on Exhibit 4 that it manufactured; (b) Ma had perjured himself on the Certificate of Destruction when he  certified destruction of molds for the tires listed on Exhibit 4, when it was now clear that the molds for the AMP M/T had never been destroyed; (c) Tri-Ace had breached the Settlement Agreement by not ceasing production of the AMP M/T (the Manufacturer Questionnaire confirmed that DDF did the OEM manufacturing for Tri-Ace) and not destroying the molds; (d) DDF had breached the agreement formed by the Stipulation not to make tires that were not confusingly similar to the Mark Ma Dakar tire;  and (e) DDF, Ma, and Tri-Ace had all defrauded Toyo with their misrepresentations relative to the AMP M/T so that Toyo would dismiss the ITC Action and the Tri-Ace Action based upon their false statements, which would allow all of them to continue to profit from the infringement of the OPMT trade dress.

### ***Ongoing Infringement By Tri-Ace And The Doublestar Entities***

71.    The OPMT Trade Dress continues to be infringed by the AMP M/T tire. The AMP M/T is confusingly similar to the explicitly-enjoined Mark Ma Tire.

72.    Both DDF and QDT have admitted to manufacturing the AMP M/T tire and with molds that are owned by Tri-Ace and/or Mr. Ma.  In view of the statements of DDF and Tri-Ace in the Questionnaire, QDT and DDF sell the AMP M/T to Tri-Ace and ship the tires into Long Beach, CA.

73.    QDT and DDF are subsidiaries of DGC.  QDT and DGC are thus affiliates of DDF and are bound by the Final Judgment signed by DDF both as affiliates of DDF

16

and because they act "in concert or participation with" DDF.

74.     Tri-Ace is bound by the Final Judgment because it acts "in concert or participation with" DDF.  The Doublestar Entities and Tri-Ace all act in concert and participation relative to the manufacture, sale, and importation into the United States of the AMP M/T.

75.     As such, the actions of DDF, QDT, DGC and Tri-Ace have been and are all in contempt of the Final Judgment.

### *Infringement By CIA*

76.      After production, the infringing AMP M/T tire is imported, sold, and/or otherwise distributed in the United States by CIA.  CIA's business is listed as "importer" at its www.wheel-1.com website.

77.     CIA makes the tire available on its own websites such as www.wheel-1.com and through various on-line retailers such as Amazon and other retailers listed on the website http://www.thewheelgroup.com/where-to-buy.   CIA even goes so far as to claim to have designed the tire, as its website www.thewheelgroup.com/about-us/ states "TWG proudly introduces its worldwide known privately designed wheel lines … under … and AMP mud terrain tires."

78.     CIA, because of its misguided belief as to the validity and its ownership of the '943 patent and the design therein, is fully incentivized to act as the U.S. distributor of the infringing AMP M/T tire.

79.     CIA's importation has occurred via the Ports of Long Beach and Los Angeles via foreign shippers such as Astor Port Group Limited.

### *Alter Ego Liability Of Jinlin Ma*

80.     Plaintiffs allege that Mr. Ma, as the founder, owner and the General Manager of Tri-Ace, is personally liable for all acts of infringement and fraud as alleged hereinbelow even if such acts were performed in the name of Tri-Ace.

81.     Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma and Tri-Ace each was, relative to the acts hereinafter alleged, the agent of the other and were

17

acting within the scope, purpose, and authority of that agency and with the knowledge, permission, and consent of the other.

82.     Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace is, relative to the acts hereinafter alleged, a mere shell, instrumentality and conduit though which Mr. Ma carries on his business, exercising such complete control and dominance over Tri-Ace to an extent that any separateness of Tri-Ace and Mr. Ma does not exist.

83.     Plaintiffs are informed and believe, and on that basis allege, that there has existed such a unity of interest between Tri-Ace and Mr. Ma such that any individuality and separateness of Tri-Ace and Mr. Ma has ceased and that Tri-Ace and Mr. Ma are each the alter ego of the other in the acts hereinafter alleged, and that adherence to a notion of a separate existence between Tri-Ace and Mr. Ma would sanction fraud and promote injustice.

84.     Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma has personally been engaged in an elaborate shell game with Toyo to defraud Toyo out of the benefit of its bargain under the Tri-Ace Settlement Agreement, and to assist DDF to engage in contempt of the Final Judgment from the Tri-Ace Action.   Plaintiffs are informed and believe, and on that basis allege, that as General Manager of Tri-Ace, Mr. Ma executed the Settlement Agreement, Manufacturer Questionnaire and Certificate of Destruction deliberately to deceive Toyo into relenting with its multiple legal actions against Tri-Ace and DDF, intending all the while to continue to profit from the infringement of Toyo's OPMT Trade Dress rights via the production and sale of the AMP M/T tire, along with its distribution in the United States by CIA.

85.     Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma has used the corporate form of Tri-Ace to perpetrate an elaborate fraud not only on Toyo, but also on the courts.   Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma was aware of the DDF Final Judgment given his own involvement in the Tri-Ace Action, yet nonetheless conspired with the Doublestar Entities to supply the tires that were enjoined, and that Tri-Ace was prohibited from selling under its own Settlement

18

Agreement.

86.     Plaintiffs are informed and believe, and on that basis allege, that  Mr. Ma signed the Settlement Agreement, knowing all the while that: (a)  he had transferred ownership of the '943 patent to CIA; (b) Tri-Ace and/or he had retained infringing tire molds in violation of the Settlement Agreement (and/or allowed the Doublestar Entities to retain them, which also violates the Settlement Agreement); and (c) he intended to use those molds to enable the Doublestar Entities and CIA to distribute infringing tires in the United States.

87.     Plaintiffs are informed and believe, and on that basis allege, that  Mr. Ma and Tri-Ace have deliberately sought to avoid their compliance with the Settlement Agreement by intentionally keeping the identity(ies) of the owner(s) of the AMP M/T tire molds (and the owner of the invalid intellectual property covering those mold designs) unknown or ambiguous.

## CLAIM 1: TRADE DRESS INFRINGEMENT
## BY THE AMP M/T TIRE (15 U.S.C. § 1125)

88.     Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

89.     This is a claim by Plaintiffs against Defendants and each of them for trade dress infringement in violation of 15 U.S.C. § 1125.

90.     The OPMT Trade Dress is owned by Toyo and has become associated with the Toyo brand.

91.     Plaintiffs are informed and believe, and on that basis allege, that  Defendants have made, used, exported, imported, marketed, sold and/or offered for sale tire products, including but not limited to the AMP M/T tires that infringe the OPMT Trade Dress in violation of 15 U.S.C. § 1125(a).

92.     To any ordinary observer, and to off-road tire customers and members of the industry, the "look" of the AMP M/T is confusingly similar to the OPMT Trade Dress and, in particular, to the ornamental and distinctive "look" of the Toyo Open Country

19

M/T tires.   Indeed, the tread design of the AMP M/T is virtually identical to and/or confusingly similar to that of the Mark Ma Dakar tires that DDF stipulated were are confusingly similar to and infringed upon the OPMT Trade Dress.

93.   Tri-Ace and/or Mr. Ma has supplied molds for use by the Doublestar Entities in the manufacture of the AMP M/T tires, and has been directly involved in the manufacture and distribution of the tires to CIA and others.

94.   Plaintiffs are informed and believe, and on that basis allege, that  Tri-Ace and Mr. Ma knew and intended the AMP M/T tires would be marketed and sold in the United States, and specifically desired the tires to be marketed and sold in the United States and has taken acts to ensure that such distribution would occur.

95.   Plaintiffs are informed and believe, and on that basis allege, that the Doublestar Entities make and thereafter sell the AMP M/T to tires Tri-Ace and/or Mr. Ma, who then re-sells the tires directly or indirectly to CIA via shipping to the United States arranged by the Doublestar entities.

96.    Plaintiffs are informed and believe, and on that basis allege, that the Doublestar Entities also engage in their own sales and importation of AMP M/T tires to the United States.

97.   Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants have specifically intended to undermine the market for Toyo's Open Country M/T tire in the United States by selling a poorer-quality infringing substitute (the AMP M/T) at reduced cost relative to the Open Country M/T.  Such acts divert sales from Toyo in the United States, infringe upon the OPMT Trade Dress, and injure Toyo's reputation (and that of the Open Country M/T tire) in the United States.

98.   Plaintiffs are informed and believe, and on that basis allege, that even Defendants' sales of infringing tires outside the United States have a significant effect on U.S. commerce, and cause monetary loss to Toyo in the United States, as well as the other injuries discussed above in the United States.

99.   Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace and

4850-9100-5483.4

Mr. Ma, in addition to directly infringing, are each contributing to infringement of the other Defendants.  Tri-Ace and Mr. Ma induce the Doublestar Entities to manufacture infringing tires for importation to and sale in the United States (and elsewhere).  Tri-Ace and Mr. Ma also induce CIA to engage in infringing acts of importation, sale and marketing in the United States.

100.    Plaintiffs are informed and believe, and on that basis allege, that the Doublestar Entities, in addition to directly infringing, are contributing to the infringement of Tri-Ace, Ma and CIA.  The Doublestar Entities conspire to have the infringing tires imported and sold in the United States (and elsewhere), and induce CIA to import, sell and market the accused tires in the United States.

101.    Plaintiffs are informed and believe, and on that basis allege, that Mr. Ma is liable for the same acts of infringement of Tri-Ace because all actions of Tri-Ace were personally performed by Mr. Ma, and Mr. Ma is further liable as an alter ego of Tri-Ace as alleged above.

102.    CIA is liable for infringing the OPMT Trade Dress through its acts of importing, marketing, advertising and selling tires that infringe the OPMT Trade Dress in the United States.

103.    Plaintiffs are informed and believe, and on that basis allege, that Defendants have been aware of Toyo's Open Country M/T tire and the OPMT Trade Dress, based not only upon Toyo's extensive and exclusive original sales of Open Country M/T tires for over ten years, but also upon the terms of the Settlement Agreement and Final Injunction in the prior action.  The Defendants' trade dress infringement has therefore been, and continues to be, willful and deliberate.  That willfulness is underscored by the filing and ownership of the invalid '943 patent that improperly purports to cover the OPMT Trade Dress.

104.    Toyo has been damaged by willful trade dress infringement by Defendants in an amount to be determined at trial, including profits of Defendants and three times the amount of actual damages sustained by Toyo, together with costs and reasonable

attorneys' fees.  Furthermore, by these acts, Defendants have irreparably injured Toyo and caused Toyo to suffer a substantial loss of goodwill and reputation, and such injury will continue unless they are enjoined by this Court.

105.    By reason of the above actions, Toyo is entitled to the full range of relief under the Lanham Act, 15 U.S.C. §§ 1116-1118, including preliminary and permanent injunctive relief against Defendants restraining further acts in violation of 15 U.S.C. § 1125.

## CLAIM 2: FRAUD AS TO TRI-ACE AND MA

106.    Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

107.    This is a claim by Toyo against Tri-Ace, Jinlin Ma, and each of them for fraud.

108.    As alleged hereinabove, Tri-Ace and Mr. Ma deliberately misrepresented and suppressed their involvement with the AMP M/T tire in response to Question  9 of the Questionnaire, which had asked "Identify which, if any, of the tires listed in Exhibit 4 to the Settlement Agreement you manufacture other than the Accused Tires."   The response deliberately failed to identify the AMP M/T.

109.    In addition, during the negotiations leading up to the Settlement Agreement between Toyo and Tri-Ace, both Tri-Ace and Mr. Ma also deliberately suppressed any information regarding their involvement with the AMP M/T tire.

110.    Plaintiffs are informed and believe, and on that basis allege, that such suppression was done because Tri-Ace, Mr. Ma, and the Doublestar Entities had a plan to fraudulently induce Toyo to settle the ITC Action and dismiss the California Action on the belief that the infringement had ceased, while continuing to secretly manufacture the AMP M/T tire for sale to CIA and others.

111.    Tri-Ace, through Mr. Ma, entered into a Settlement Agreement with Toyo under which Tri-Ace promised to cease and desist from any infringement of the OPMT Trade Dress (including specifically via the AMP M/T tire), and to destroy all infringing

molds in its possession, or in the possession of any manufacturers.

112.    Tri-Ace, through Mr. Ma, further agreed in the Settlement Agreement to cancel the '943 patent and warranted that it had the legal authority to do so.  Plaintiffs are informed and believe, and on that basis allege, that  Tri-Ace and Mr. Ma knew when the cancellation obligation was impossible to implement and that the warranty representation was false because the '943 patent had been previously assigned to CIA.

113.    Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace and Ma: (a) knew at the time they misrepresented and suppressed information about the AMP M/T tire that such misrepresentations and suppression concerned highly important and material information; and (b) had no intention of carrying out their promises in the Settlement Agreement as of the time they negotiated and signed the Settlement Agreement.

114.    Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace and Ma made their false promises in the Settlement Agreement to fraudulently induce Toyo to settle the ITC Action and dismiss the California Action on the belief that the infringement had ceased, while continuing to secretly manufacture the AMP M/T tire for sale to CIA.

115.    Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace and Mr. Ma specifically intended that Toyo would rely on all the foregoing misrepresentations, suppressions and false promises.

116.    Toyo did indeed reasonably rely upon them to its detriment by executing the Settlement Agreement, and by not pursuing the infringement matter any further.

117.    Toyo's reliance was to its detriment because it would have never executed the Settlement Agreement, or relented in pursuing the infringement, had it known Tri-Ace and Ma's true intentions, and thus might have been able to stop further infringement of the OPMT Trade Dress as of January 2014.  Tri-Ace and Ma's fraud has thus directly led to almost another two years of infringement on the AMP M/T tire that should never have occurred.

118.    Mr. Ma and Tri-Ace compounded their fraud via the subsequent execution

under penalty of perjury of the completely false Certificate of Destruction on August 14, 2014 attesting to the destruction of all infringing molds in its own possession and that of any manufacturers.  Among the molds that were supposedly destroyed were those: (a) listed on Ex. 4 of the Settlement Agreement, which included the AMP M/T tire; and (b) those defined as Accused Tires, which included the Mark Ma Dakar M/T tires.

119.    Plaintiffs are informed and believe, and on that basis allege, that Tri-Ace/Ma knew this Certificate was false when it was executed and provided to Toyo and that the execution of the false Certificate was done for the sole purpose of preventing or delaying Toyo's discovery of the source of the AMP M/T tires and thus of their breach of contract. Tri-Ace and Mr. Ma indeed had successfully covered their tracks until the discovery less than two weeks ago as to the ownership of the molds of the AMP M/T and the involvement of Tri-Ace and Mr. Ma in the ongoing manufacturing and distribution of the AMP M/T tire.

120.    As a result of Tri-Ace and Ma's fraud, Toyo is entitled to recover all of its lost sales, as well as all of its attorneys' fees and legal expenses incurred in conjunction with the Tri-Ace Action, the Tri-Ace Settlement Agreement, and all subsequent efforts to achieve the benefit of the bargain that the Settlement Agreement was supposed to have afforded, including all legal costs and attorneys' fees associated with the present action. Toyo is further entitled to rescission of the Settlement Agreement.

121.    Toyo is further entitled to punitive damages against Tri-Ace and Ma on account of their intentional and willful misconduct.

122.    Mr. Ma is individually liable along with Tri-Ace because he directly participated in the fraud and personally engaged in the negotiations and executed the documents.  Ma is further liable as an alter ego of Tri-Ace as alleged above.

## CLAIM 3: FRAUD AS TO DDF

123.    Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

124.    This is a claim by Toyo against DDF for fraud.

24

125.    As alleged hereinabove, DDF deliberately misrepresented and suppressed its involvement with the AMP M/T tire in response to Question  9 of the Questionnaire, which had asked "Identify which, if any, of the tires listed in Exhibit 4 to the Settlement Agreement you manufacture other than the Accused Tires."   The response deliberately failed to identify the AMP M/T

126.    DDF also defrauded Toyo by entering into a Stipulation for Final Judgment whereby DDF agreed, on behalf of it related entities and those acting in concert with DDF - including QDT, DGC, Tri-Ace, Mr. Ma, and CIA - that it would cease manufacture and sale of tires that infringe upon the OPMT Trade Dress.  DDF knew these representations to be both material and untrue at the time they were made.   Indeed, the intent of DDF was to expand production of the AMP M/T to include production by its sister QDT.

127.    DDF also specifically intended that Toyo would rely on the foregoing false assertions, and Toyo did indeed reasonably rely upon them to its detriment by entering into the Stipulation for the Final Judgment to resolve the Tri-Ace action with respect to DDF and to allow the production of the AMP M/T to expand.

128.    Toyo's reliance was to its detriment because it would have never agreed to the Stipulation had it known DDF's true intentions, and thus might have been able to stop further infringement of the OPMT Trade Dress as of January 2014.  DDF's fraud has thus directly led to almost another two years of infringement via the AMP M/T tire.

129.    DDF was successful in its efforts because only in the last 30 days has the ownership of the molds of the AMP M/T and the involvement of Tri-Ace and Mr. Ma in the ongoing manufacturing and distribution of the AMP M/T tire been discovered.

130.    As a result of DDF's fraud, Toyo is entitled to recover all of its lost sales, as well as all of its attorneys' fees and legal expenses incurred in conjunction with the Tri-Ace Action, the Stipulation with DDF, and all subsequent efforts to achieve the benefit of the bargain that the Stipulation was supposed to have afforded.

131.    Toyo is further entitled to punitive damages against DDF on account of its intentional and willful misconduct.

## CLAIM 4: BREACH OF CONTRACT AS TO TRI-ACE AND MA

132.     Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

133.     This is a claim by Toyo against Tri-Ace, Jinlin Ma, and each of them for breach of contract.

134.     The Settlement Agreement between Toyo and Tri-Ace called for Tri-Ace to cease all manufacture and sale of tires that infringed upon the OPMT Trade Dress, including the AMP M/T tire.  Tri-Ace further agreed that it would destroy all infringing molds, including those in the possession of manufacturers.  Tri-Ace further agreed that it would have the '943 patent cancelled.  Tri-Ace represented and warranted that it had the legal ability to perform under the Settlement Agreement.

135.     Tri-Ace has breached the Settlement Agreement by allowing the manufacture of the AMP M/T tires to continue past the execution of the Settlement Agreement, by not destroying the molds as required, and by falsely representing that it would have the '943 patent cancelled (the '943 patent remains in full force and effect, despite being invalid).

136.     Toyo fully performed under the Settlement Agreement and is not in breach thereof.

137.     Toyo has been damaged as a result of Tri-Ace's breach of the Settlement Agreement.  Specifically, infringing sales and marketing of the AMP M/T tire have continued, and Toyo has had to expend significant resources fighting that infringement. Toyo in entitled to recover all damages afforded to it under Section 4.2 of the Settlement Agreement, including a 20% royalty on infringing sales and immediate injunctive relief. Toyo is further entitled to recover all of its attorneys' fees and legal expenses incurred in conjunction with the Tri-Ace Action, the Tri-Ace Settlement Agreement, and all subsequent efforts to achieve the benefit of the bargain that the Settlement Agreement was supposed to have afforded, including all legal costs and attorneys' fees associated with the present action.

138.     Toyo is further entitled to specific performance under the Settlement Agreement to enforce the obligations that to which Tri-Ace agreed.

139.     Mr. Ma is jointly liable with Tri-Ace as an alter ego as alleged above and also because he personally engaged in the negotiations and executed the documents.

## CLAIM 5: BREACH OF CONTRACT AS TO DDF

140.     Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

141.     This is a claim by Toyo against DDF for breach of contract.

142.     DDF is liable for breach of contract by virtue of its breach of the Stipulation, which constituted a valid written agreement between the parties, and as confirmed by DDF in ¶ 15 its Answer, by which Toyo agreed to forebear from further prosecution of the litigation in exchange for DDF's promise to be bound by the Final Judgment. Specifically, the Stipulation between Toyo and DDF called for DDF to cease all importation, manufacture, marketing and sale of tires that infringed upon the OPMT Trade Dress.

143.     DDF has breached the Stipulation by continuing with the manufacture of the AMP M/T tires for sale and marketing in United States.

144.     Toyo fully performed under the Stipulation and is not in breach thereof.

145.     Toyo had been damaged as a result of DDF's breach of the Stipulation. Specifically, infringing sales and marketing of the AMP M/T tire have continued, and Toyo has had to expend significant resources fighting that infringement.  Toyo is entitled to recover all of its lost sales, as well as all of its attorneys' fees and legal expenses incurred in conjunction with the Tri-Ace Action, the Stipulation, and all subsequent efforts to achieve the benefit of the bargain that the Stipulation was supposed to have afforded, including all legal costs and attorneys' fees associated with the present action.

146.     Toyo is further entitled to specific performance under the Stipulation to enforce the obligations that to which Tri-Ace agreed.

27

4850-9100-5483.4

## CLAIM 6: STATE LAW UNFAIR COMPETITION

147.     Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, 90-104, 108-119, 125-129, 133-134, and 142-144, inclusive, and incorporate them by this reference herein.

148.     This is a claim by Toyo against Defendants and each of them for unfair competition in violation of § 17200 et seq. of the California Business and Professions Code.

149.     By their actions as alleged above, Defendants conduct constitutes unlawful, unfair, and/or fraudulent business practices of a type proscribed by § 17200 et seq. of the California Business and Professions Code.

150.     By reason of the above actions, Toyo is entitled to including preliminary and permanent injunctive relief against Defendants restraining further acts in violation of § 17200 et seq. of the California Business and Professions Code.

## CLAIM 7: DECLARATORY JUDGMENT OF PATENT INVALIDITY

151.     Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

152.     This is a declaratory judgment claim for the invalidity of the '943 patent.

153.     The '943 patent is based on the tread design of OPMT tire.  Mr. Ma did not design the OPMT tire tread, but attempted to appropriate the rights to that design for himself and CIA via the '943 patent.

154.     The '943 patent is invalid for a variety of reasons, under 35 U.S.C. §§ 102, 102, and 112, including the wrong inventor, a filing date some ten (10) years after the Open Country M/T tires were first sold.

155.     The continued existence of the '943 patent and is ownership by CIA, particularly, despite Tri-Ace's promise in the Settlement Agreement to nullify or cancel it, has created substantial, immediate and actual controversy between the Toyo and CIA as to the validity and enforceability of the '943 patent.

156.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the invalidity of the '943 U.S. patent is necessary and appropriate under the circumstances.

## CLAIM 8: DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY

157.     Plaintiffs reallege each and every allegation set forth in paragraphs 1-87, inclusive, and incorporates them by this reference herein.

158.     This is a declaratory judgment claim for the unenforceability of the '943 patent.

159.     The '943 patent is based on the tread design of OPMT tire.  Mr. Ma did not design the OPMT tire tread, but attempted to appropriate the rights to that design for himself and CIA via the '943 patent.

160.     The '943 patent is unenforceable because of inequitable conduct on the U.S. Patent Office ("PTO") by Mr. Ma and CIA, who were was responsible for the prosecution of the application for the '943 patent and who each had a duty of disclosure to the PTO under 37 C.F.R. § 1.56.  At no time during the prosecution of the '943 patent, however, was Toyo's OPMT Tire cited to the PTO by Mr. Ma or CIA.

161.     The OPMT Tire was very material prior art to the prosecution of the '943 patent because: (a) the OPMT tread design was extremely similar to the tread design of the '943 patent; (b) Mr. Ma based the tread design of the '943 patent on the tread design of the OPMT Tire; and (c) the OPMT Tire was clearly prior art because it had been on sale for ten (10) years prior to the filing of the application for the '943 patent.

162.      Mr. Ma and CIA were fully aware of the OPMT Tire during the prosecution of the '943 patent and intentionally failed to cite the OPMT Tire to the PTO in order to mislead the patent examiner and obtain a patent on Toyo's design.   The patent examiner was indeed misled and relied upon the omission to issue the '943 patent.  But for the inequitable conduct of Mr. Ma and CIA, the '943 patent would never have issued.

163.     The continued existence of the '943 patent under such circumstances has created substantial, immediate and actual controversy between the Toyo and CIA as to the

29

enforceability of the '943 patent.

164.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the unenforceability of the '943 patent is necessary and appropriate under the circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, by virtue of the unlawful conduct of Defendants as alleged in the claims above, Plaintiffs respectfully pray for judgment against Defendants as follows:

A.    That Defendants and each of them be adjudged to have infringed Toyo's OPMT Trade Dress in violation of 15 U.S.C. § 1125(a).

B.    That Defendants' trade dress infringement be adjudged willful and deliberate.

C.    That Tri-Ace, Jinlin Ma and DDF and each of them be adjudged to be liable for defrauding Toyo.

D.    That Tri-Ace, Jinlin Ma and DDF and each of them be adjudged to be liable for breach of contract.

E.    For an award of money damages against Tri-Ace, Jinlin Ma and in an amount to be ascertained, and including but not limited to Toyo's lost sales, all of its attorneys' fees and legal expenses incurred in conjunction with the Tri-Ace Action, the Tri-Ace Settlement Agreement, and all subsequent efforts to achieve the benefit of the bargain that the Settlement Agreement was supposed to have afforded, including all legal costs and attorneys' fees associated with the present action, as well as the trebling thereof.  Toyo is further entitled to relief from Tri-Ace as specified in Section 4 of the Settlement Agreement.

F.    For an accounting for all profits of each Defendant derived by reason of the acts alleged in this Complaint.

G.    For an award of punitive damages against Tri-Ace, Jinlin Ma and DDF for their fraud.

H.    For an order compelling each Defendant to disgorge the amounts by which it has been unjustly enriched by the acts alleged herein.

I.      For an order rescinding the Settlement Agreement, as an alternative form of relief.

J.      That Defendants and their its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with it be preliminarily and permanently enjoined from:

(1)     Selling the AMP M/T tire;

(2)     Using  Toyo's OPMT Trade Dress or any trade dress or tread or sidewall design confusingly similar thereto, for or in connection with advertising, marketing, promoting, distributing, offering for sale, or selling tires;

(3)     Using photographs, illustrations, or other depictions of  Toyo's OPMT Trade Dress or any trade dress or tread or sidewall design confusingly similar thereto, for or in connection with advertising, marketing, promoting, distributing, offering for sale, or selling tires;

(4)     Using any name, mark, designation, product configuration, trade dress, or other material for or in connection with advertising, marketing, promoting, distributing, offering for sale, or selling tires that are likely to cause confusion, mistake or deception as to source relative to any of Toyo's names, marks, designations, product configurations, or trade dress, including but not limited to Toyo's OPMT Trade Dress;

(5)     Passing off its goods and/or services as those of Toyo and/or claiming to have designed the AMP M/T and/or and tire confusingly similar thereto;

(6)     Engaging in any conduct aimed at or likely to result in diverting business intended for  Toyo or injuring  Toyo's goodwill or business reputation by way of imitation, misrepresentation, false statements, advertising, fraud and/or deception; and

(7)     Unfairly competing with Toyo.

K.      For an order from this Court compelling each Defendant to mail notice letters at their own expense to all distributors, dealers, accounts, salesmen, employees,

31

4850-9100-5483.4

jobbers, and suppliers, informing them that each Defendant has committed trade dress infringement, and that Defendant has no affiliation, connection, or other business relationship with Plaintiffs, and requesting that the letter recipients return to Defendant for full credit or refund all of Defendant's tires using the infringing design and/or trade dress.

L.     For an order from this Court commanding that each Defendant deliver to Plaintiffs for destruction all advertising, products, tires, labeling, packaging, sales literature, promotional literature, owner's manuals, catalogs, displays, boxes, packages, and other trade pieces within their possession or control and which use or display the infringing design and trade dress.

M.     That a constructive trust imposed on all revenue, income and things of value derived by each Defendant in the marketing and selling of tires using imitative tread designs, trade dress and marks, including the tread design and trade dress complained of in Complaint.

N.     For a declaration that U.S. Design Patent No. D691,943 is invalid and/or unenforceable.

O.     For judgment, relief, and requests as set forth in this Complaint.

P.     For an award of reasonable attorney's fees, prejudgment interest, and costs of this action.

Q.     For such other, further, and different relief as the court deems proper under the circumstances.

Dated:  December 29, 2015              /s/ *William J. Robinson*
                                       William J. Robinson
                                       **FOLEY & LARDNER LLP**

                                       **Attorneys for Toyo Tire & Rubber Co.,
                                       Ltd.** and **Toyo Tire U.S.A. Corp.**

32

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs Toyo Tire & Rubber Co., Ltd. and Toyo Tire U.S.A. Corp. hereby demand a trial by jury of all issues so triable.

Dated:  December 29, 2015

/s/ *William J. Robinson*
William J. Robinson
**FOLEY & LARDNER LLP**

**Attorneys for Toyo Tire & Rubber Co., Ltd.** and **Toyo Tire U.S.A. Corp.**